IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Shelia T. Thomas, | ) | C/A No. 0:15-4980-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Santander Consumer USA, Inc., Santander | ) | |
| Consumer USA Holdings, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Shelia T. Thomas, filed this case against her former employer, Santander Consumer USA, Inc. ("SCUSA") as well as against Santander Consumer Holdings, Inc. ("Santander Holdings"). In her Complaint, Thomas asserts claims against the defendants for (1) a hostile work environment, retaliation, and discriminatory discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.; (2) failure to accommodate, hostile work environment, retaliation, and discriminatory discharge under the Americans with Disabilities Act, 42 U.S.C. §§ 1201, et seq.; (3) a hostile work environment, retaliation, and discriminatory discharge under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq.; and (4) retaliation and interference under the Family Medical Leave Act, 29 U.S.C. §§ 2601, et seq. She also appears to assert state law claims for intentional infliction of emotional distress and negligence. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Defendant SCUSA's motion to stay litigation and compel arbitration, or in the alternative to dismiss (ECF No. 24) and Defendant Santander Holdings's motion to dismiss, or in the alternative to stay litigation and compel arbitration (ECF No. 30). Pursuant to Roseboro v.

Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Thomas of the summary judgment and dismissal procedures and the possible consequences if she failed to respond adequately to the defendants' motions. (ECF Nos. 27 & 32.) Thomas filed one response in opposition to both of the defendants' motions. (ECF No. 35.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motions to dismiss should be granted.

## DISCUSSION

### A.     Defendant Santander Holdings

Defendant Santander Holdings asserts that it is the parent company of Thomas's former employer, Defendant SCUSA. Specifically, it contends that "[Defendant] Santander Consumer USA Holdings, Inc. never employed Plaintiff in any capacity and did not operate business in South Carolina where Plaintiff was employed." (Def. Santander Holdings's Mem. Supp. Mot. to Dismiss at 1 n.1, ECF No. 30-1 at 1 n.1.) Thus, Defendant Santander Holdings argues that it is not a proper defendant in Thomas's employment-related claims and should be dismissed. Thomas has not disputed this assertion, nor has she presented any argument against the dismissal of Defendant Santander Holdings on this basis. Accordingly, the court concludes that Santander Holdings's motion should be granted.

### B.     Defendant SCUSA

#### 1.     Arbitration Generally

A litigant can compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., if the litigant can demonstrate: "(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign



commerce; and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute." Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (quoting Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002)).  The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The policy behind the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991).  Thus, courts are to afford a "healthy regard" for the federal policy favoring arbitration, id. at 26, and arbitration agreements are to be "rigorously enforced," Perry v. Thomas, 482 U.S. 483, 490 (1987).  Doubts regarding the scope of issues covered by an arbitration agreement must be resolved in favor of arbitration.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  The United States Supreme Court has specifically held that the FAA and the policies behind it apply in the employment context.  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001).

When a question of arbitrability arises, the district court, not the arbitrator, decides whether a matter should be resolved through arbitration.  See Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299-301 (2010); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942-44 (1995); AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 651 (1986).  This determination, however, is limited to a two-step inquiry:  (1) whether a valid arbitration agreement exists; and (2) whether the specific dispute falls within the substantive scope of the arbitration agreement.  See Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999); see also Chorley Enters., Inc. v. Dickey's Barbeque Rests., Inc., 807 F.3d 553, 563 (4th Cir. 2015).  Arbitration is

compelled "unless it may be said with positive assurance that the arbitration [agreement] is not susceptible of an interpretation that covers the asserted dispute." Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). If all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is appropriate. Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001).

### 2. Validity of Arbitration Agreement

Whether a valid arbitration agreement exists is a question of state contract law. Kaplan, 514 U.S. at 944; see also Chorley Enters., Inc., 807 F.3d at 563. Here, SCUSA has presented a copy of its arbitration policy which states, in relevant part:

> The Company and the Associate agree to submit to binding arbitration any dispute, claim, or controversy that may arise between Associate and the Company arising out of or in connection with the Company's business, the Associate's employment with the Company, or the termination of Associate's employment with the Company.
>
> This Arbitration Policy is intended to broadly cover the entire relationship between Associate and Company and includes, without limitation (except as specifically noted below), any dispute claim or controversy relating to any personal injury suffered by Associate, Associate's job performance, any claim arising under any state or federal common law or any state or federal statute, breach of contract, misappropriation of the Company's equipment and funds, Associate's compensation, and any discrimination claim arising under any state or federal statute, including but not limited to the Fair Labor Standards Act, the Equal Pay Act, the Age Discrimination in Employment Act, Americans with Disabilities Act, the Older Workers Benefit Protection Act, the Employee Income Retirement Security Act, and Title VII of the United States Code. This Arbitration Policy also includes claims that the Associate may bring against other employees or agents of the Company, that are based in whole or in part, on the employment relationship between the Associate and the Company.

(ECF No. 24-3 at 2.) Also presented by SCUSA is a copy of the "Arbitration Acknowledgment," signed by Thomas, which reads, "I . . . have reviewed a copy of the SCUSA's Arbitration Policy"



and "I further confirm I have been advised that Arbitration is a condition of employment at SCUSA, and that by continuing my employment at SCUSA after being presented with the Arbitration Policy, I will be subject to such Arbitration Policy." (Id. at 3.)

Thomas contends that the policy was not reviewed with her and she did not receive the American Arbitration Association "Employment Arbitration Rules and Mediation Procedures." She also argues that SCUSA failed to advise her of the availability of or procedures involved in arbitration during her employment disputes or the administrative process. Therefore, Thomas appears to contend that she cannot be bound by the Policy.[1] This argument is not persuasive. As indicated above, it is undisputed that Thomas signed the Arbitration Acknowledgment which states that she has "reviewed a copy of SCUSA's Arbitration Policy" and confirms she "[has] been advised that Arbitration is a condition of [her] employment at SCUSA." (ECF No. 24-3 at 3.) By signing the Acknowledgment, Thomas gave her confirmation that she had read and was bound by the Arbitration Policy, and that her employment was conditioned upon consenting to the Arbitration Policy. Thus, Thomas's arguments are insufficient to avoid a binding arbitration agreement. See, e.g., Munoz v. Green Tree Fin. Corp., 542 S.E.2d 360, 365 (S.C. 2001) ("[A] person who can read is bound to read an agreement before signing it."); Regions Bank v. Schmauch, 582 S.E.2d 432, 440 (S.C. Ct. App. 2003) ("A person signing a document is responsible for reading the document and making sure of its contents. Every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it.").

---

[1] There appears to be no dispute that Thomas's employment involved interstate commerce.

Because the signed Arbitration Acknowledgment clearly shows an offer and acceptance supported by consideration, the court concludes that the arbitration agreement between Thomas and SCUSA is valid.

### 3.     Unconscionability

Thomas also asserts that the arbitration agreement is unconscionable because, in addition to her above arguments, it was an adhesion contract and because she cannot afford arbitration. To avoid a contract based on unconscionability under South Carolina contract law, a plaintiff must show (1) an absence of meaningful choice on the part of one party due to one-sided contract provisions; *and* (2) terms so oppressive that no reasonable person would make them and no fair and honest person would accept them. Lucey v. Meyer, 736 S.E.2d 274, 283 (S.C. Ct. App. 2012). Also, when determining unconscionability in the context of arbitration agreements, "the Fourth Circuit has instructed courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." Id. (internal quotation marks and citation omitted) (also citing Hooters of Am., Inc., 173 F.3d at 938). An agreement being made on a "take it or leave it" basis does not make a contract *per se* unenforceable. Munoz, 542 S.E.2d at 365 ("Under state law, an adhesion contract is not per se unconscionable.") (citing Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc., 472 S.E.2d 242 (S.C. 1996)). Moreover, because SCUSA's Arbitration Policy follows the AAA's rules for arbitration, it is clear that SCUSA's policy is "geared towards achieving an unbiased decision by a neutral decision-maker." Lucey, 736 S.E.2d at 283. SCUSA's Arbitration Policy provides that SCUSA is also bound by its policy, so it is not "one-sided" or "oppressive" against Thomas. (ECF No. 24-3.) In addition, the AAA's rules provide that the filing fee for the



employee is capped at $200 which, as pointed out by the defendants, is half of the current fee for filing a case in this court. (ECF No. 24-4 at 9.)

Accordingly, the court concludes that because the arbitration agreement appears to sufficiently attempt to achieve an unbiased decision rendered by a neutral decision maker, and because the agreement is not unduly oppressive towards Thomas, it is not unconscionable and is still a valid contract.

### 4. Scope of the Arbitration Agreement

With the validity of the arbitration agreement established, the next question is whether the dispute is within the scope of the arbitration agreement. The Arbitration Policy clearly provides that it covers "any claim arising under any state or federal common law or any state or federal statute . . . and any discrimination claim arising under any state or federal statute, including but not limited to . . . the Age Discrimination in Employment Act, Americans with Disabilities Act, . . . and Title VII of the United States Code." (ECF No. 24-3 at 2.) It also provides that claims against "other employees or agents of the Company, that are based in whole or in part, on the employment relationship between the Associate and Company." (Id.) Thomas's claims against SCUSA are clearly within the scope of the Arbitration Policy, so those claims must be submitted to arbitration.

### RECOMMENDATION

The record shows that Thomas's claims cannot be maintained against Santander Holdings as Santander Holdings is not her employer. Further, Thomas's claims against SCUSA are covered by a valid arbitration agreement and those claims must therefore be dismissed. Choice Hotels Int'l, Inc., 252 F.3d at 709-10. Accordingly, the court recommends that Defendant Santander Holdings's



motion to dismiss (ECF No. 30) be granted and Defendant SCUSA's motion to compel arbitration (ECF No. 24) be granted and this matter be dismissed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 29, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).